IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ALBERT LINE                                                                                              PLAINTIFF

v.                                    CASE NO.        11-2117

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed her applications for DIB and SSI on AUGUST 29, 2008 (T. 132), alleging an onset date of February 13, 2008 (T. 152), due to plaintiff's back pain, numbness from his hips down, COPD and asthma (T., 156).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on December 2, 2009. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 57 years of age and possessed a high school education.  The Plaintiff had past relevant work ("PRW") experience as a water

meter reader, street sign repairer, and branch manager  (T. 163).

On May 4, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's tremor in his right hand, past superior endplate compression of the lumbar spin and alcohol addition in remission did not meet or equal any Appendix 1 listing.  T. 14.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform the full range of light work except that he should perform no work requiring more tank frequent handling, frequent balancing, or, occasional fine manipulation, occasional exposure to unprotected heights, or occasional climbing of ladders, ropes, or scaffolds.  T. 15.  The ALJ then determined that the Plaintiff  was capable of performing his past relevant work as a meter reader and found him to not be disabled (T. 20).

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to

perform the full range of light work[1] except that he should perform no work requiring more tank frequent handling, frequent balancing, or, occasional fine manipulation, occasional exposure to unprotected heights, or occasional climbing of ladders, ropes, or scaffolds.  T. 15.

### A.  RFC

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering

---

[1] Light work is defined by the DOT as exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects.... Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible*.  See Page v. Astrue*,  484 F.3d 1040, 1044 (C.A.8 (Ark.),2007)

medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

    1.  **Evaluation of Treating Physician**

The Plaintiff first contends that the ALJ committed error in discounting the evaluation of Dr. Asbury (ECF No. 11, p. 6) attending physician statement submitted on September 5, 2008 which stated that he first treated Plaintiff on  April 30, 2004; Diagnosed him with: tremors, neuropathy, COPD; stated that the Plaintiff would need to take unscheduled breaks during an 8 hour work shift; that his condition was likely to produce good and bad days; that on average, Plaintiff was likely to be absent from work as a result of the impairments or treatment about 4 days per month; that he expected a fundamental or marked change for the better in the future; that the Plaintiff could not use his hands for repetitive action such as fine manipulation but could use them for simple grasping and pushing and pulling; and that the Plaintiff could use both feet for repetitive movements. (T.  210).

The ALJ found that the attending physician's statement completed by Dr. Asbury on September 5, 2008 was "not supported by medically acceptable clinical and laboratory diagnostic techniques" and that his opinions were, therefore, conclusory. T. 19  A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted).

Dr. Asbury states that he has treated the Plaintiff since April 30, 2004 but the first evidence of treatment is a medical record on January 10, 2008 when the Plaintiff came to Dr. Asbury for a physical exam.  The history of present illness reflects an emotional state over personal and family matters in the Plaintiff's life.  The doctor's assessment was depression, anxiety, smoking and alcohol abuse and he was placed on Prozac[2] 20 mg and Atarx[3] 50 mg and told to quit smoking and decrease his alcohol consumption. (T. 217).

On February 7, 2008 the Plaintiff saw Dr. Asbury for a loss of appetite, weight loss and tremors.  Dr. Asbury diagnosed the Plaintiff with alcohol abuse, dysphagia[4], and chronic obstructive pulmonary disease. His plan was for the Plaintiff to quit drinking, Ativan, CT of the abdomen, Prevacid[5], and he ordered an EGD. (T. 216).  The EGD was unremarkable except for

---

[2] Prozac (fluoxetine) is a selective serotonin reuptake inhibitors (SSRI) antidepressant. Prozac affects chemicals in the brain that may become unbalanced and cause depression, panic, anxiety, or obsessive-compulsive symptoms.

[3] Atarax is used as a sedative to treat anxiety and tension.

[4] Dysphagia is difficulty eating because of disruption in the swallowing process.

[5] Prevacid decreases the amount of acid produced in the stomach. Prevacid is used to treat and prevent stomach and intestinal ulcers, erosive esophagitis, and other conditions.

the fact that the Plaintiff was noted to have been drinking alcohol on the morning of his EGD test. (T. 229).

The Plaintiff alleged that he became disabled on February 13, 2008 because of back pain, numbness from his hips down, COPD and asthma. (T. 156).

The Plaintiff did not see Dr. Asbury again until June 10, 2008 and then only because he was out of medication. Dr. Asbury diagnosed the Plaintiff with depression and insomnia. He prescribed Elavil, Atarax, and Lorcet Plus and told him to quit smoking. (T. 215).

On September 5, 2008, approximately one week after the Plaintiff had filed his application for DIB (T. 132) the Plaintiff saw Dr. Asbury complaining of Tremor, shakes, and numbness in the hips. Dr. Asbury noted that the Plaintiff's cranial nerves were intact but that he had an "intentional tremor" in both hand which was markedly improved with rest. He assessed the Plaintiff with an Intentional tremor, ethanol abuse and paresthesias of both legs. He prescribed Neurontin[6] 300 mg p.o. (orally) nightly for a week and then b.i.d. (two times per day), ordered a BMP (Bacic Metabolic Panel) and CBC (Complete blood count) and he completed some forms for Medicare (T. 214).

The effective dose of Neurontin is 900 to 1800 mg/day and given in divided doses (three times a day) using 300 or 400 mg capsules, or 600 or 800 mg tablets. The starting dose is 300 mg three times a day. If necessary, the dose may be increased using 300 or 400 mg capsules, or 600 or 800 mg tablets three times a day up to 1800 mg/day. Dosages up to 2400 mg/day have been well tolerated in long-term clinical studies. Doses of 3600 mg/day have also been administered to a small number of patients for a relatively short duration, and have been well tolerated. The

---

[6] Neurontin (gabapentin) is an anti-epileptic medication, also called an anticonvulsant.

maximum time between doses in the TID schedule should not exceed 12 hours. See

www.drugs.com.

      While the Plaintiff asserted to Dr. Asbury that he had these tremors, shakes, and numbness in his hips for "a number of months to years" there is nothing in the medical records to validate the symptom of numbness in his hips or that the Plaintiff had ever complained of this conditions prior to September 5, 2008 and had only complained of the "tremors" once prior in February 2008.  Nor does the record indicate that the Plaintiff sought any treatment for the alleged symptoms after September 5, 2008. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995).  Dr. Asbury also indicated on September 5, 2008 that the Plaintiff was "markedly improved with rest" (T. 214) and he expected a "fundamental or marked change for the better in the future" (T. 210).  The ALJ was correct to discount the treating physicians's statement.

      **2.  Agency Evaluation**

      The Plaintiff was sent for a general physical examination which was conducted by Marie Pham, APN, Nurse Practitioner on November 12, 2008 who reported that there no evidence of muscle atrophy at any level; there were no sensory abnormalities; and Plaintiff enjoyed a steady gait (Tr. 271). Neurologically, the reflexes in Plaintiff's arms bilaterally were diminished, and there were symptoms of tremor in his right arm, which was relieved when Plaintiff made "purposeful movement" (Tr. 271). Plaintiff's limb function was normal, with a 100 percent normal grip strength, bilaterally. Plaintiff's range of motion in all extremities, and in the cervical and lumbar spine (Tr. 272). Nurse Pham also referred the Plaintiff to Dr. William Hocott for a

Rogentgenological Report (xray) which was performed on November 11, 2008. Dr. Hocott found a probable old superior endplate compression of L5. (T. 269). Nurse Pham opined that based on physical exam today, this patient has no physical limitations, she offered that "he needs to quit drinking" (Tr. 273). Nurse Pham's findings were approved by Dr. Frisbie but there is no evidence that Dr. Frisbie ever saw the Plaintiff.

Other sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists.  Therapists and nurse practitioners are specifically listed as "other" medical sources who may present evidence of the severity of the claimant's impairment and the effect of the impairment on the claimant's ability to work. Id. §§ 404.1513(d)(1), 416.913(d)(1).  *Lacroix v. Barnhart*  465 F.3d 881, 887 (C.A.8 (Iowa),2006).

In this case the nurse practitioner administered a series of quantitative test and recorded the outcome of each test. Her results, when compared to Dr. Ausbury's, are more persuasive.

In addition the ALJ secured a Physical RFC Assessment provided by Dr. Jerry Thomas on November 21, 2008 who found the Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, and that he could stand and/or walk and sit for 6 hours in an 8 hour work day. He found no limitations on the Plaintiff's ability to push and/or pull (T. 275) and no manipulative limitations (T. 277). Dr. Thomas' findings were reviewed and affirmed by Dr. David Hicks on February 5, 2009. (T. 297).

### B.  Subjective Complaints

The ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the allege symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the RFC. (T. 16).  The Plaintiff does not contest the ALJ's decision to discount the Plaintiff's subjective complaints.

    **C.  Step Four**

The Plaintiff contends that the ALJ erred in the determination that he could return to his past relevant work as a meter reader.

Step four requires the ALJ to consider whether the claimant retains the RFC to perform her past relevant work. The claimant bears the burden of demonstrating an inability to return to past relevant work. *Pate-Fires v. Astrue* 564 F.3d 935, 942 (C.A.8 (Ark.),2009) *citing Steed v. Astrue,* 524 F.3d 872, 875 n. 3 (8th Cir.2008).  At this step the ALJ must consider whether a claimant's impairments keep him from doing past relevant work.  *See Jones v. Chater*, 86 F.3d 823, 826 (8th Cir.1996) (citing 20 C.F.R. § 404.1520). The ALJ will find that a claimant is not disabled if he retains the RFC to perform:

    1. The actual functional demands and job duties of a particular past relevant job; or

    2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.  *Wagner v. Astrue*  499 F.3d 842, 853 (C.A.8 (Iowa),2007).

The regulations provide that the ALJ may elicit testimony from a vocational expert in evaluating a claimant's capacity to perform past relevant work. 20 C.F.R. § 404.1560(b)(2) ("We may use the services of vocational experts or vocational specialists ... to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."). This court has implicitly approved of an ALJ considering vocational expert

testimony at step four of the evaluation process. *See Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir.1994).

In this case the ALJ did utilize a VE who testified that, based upon the RFC, the Plaintiff could perform the function of his past job as meter reader (T. 65) which he had performed from January 2002 through February 2008 (T. 163). The court finds no error in the ALJ's determination that the Plaintiff could return to his past relevant work as a meter reader.

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this July 30, 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE